IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

Case No.: _____

GREAT LAKES INSURANCE SE,

    Petitioner,

v.

IZALVA CORP. dba: LA BAMBA
SPANISH RESTAURANT,

    Respondent.
_____/

**PETITION FOR DECLARATORY RELIEF**

Petitioner, Great Lakes Insurance SE ("GLISE"), pursuant to 28 U.S.C. § 2201, files this Petition for Declaratory Relief against Respondent, Izalva Corp. dba: La Bamba Spanish Restaurant ("La Bamba") (collectively, the "Parties"), and alleges as follows:

    **I.**    **PARTIES, JURISDICTION, VENUE**

1. This is an action for declaratory relief brought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332 seeking a determination whether La Bamba is entitled to coverage from GLISE for its Hurricane Milton property insurance claim pursuant to governing law and the language of the subject property insurance policy.

2. The amount in controversy presented by this *bona fide*, actual, and present dispute far exceeds this Court's jurisdictional threshold of $75,000,

exclusive of attorney's fees and costs, and there is complete diversity of citizenship between GLISE and La Bamba as alleged herein below.

3.　　GLISE is organized as a Societas Europaea, or "SE," and is a European corporation pursuant to the corporate laws of the European Union.[1]

4.　　As GLISE is effectively a corporation, when determining GLISE's citizenship, it is a citizen of both its state of incorporation and principal place of business for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

5.　　GLISE's registered office is in Munich, Germany, entered into the commercial register of the local court in Munich under HRB 230378. Furthermore, GLISE's principal place of business is at Königinstrasse 107, 80802 Munich, Germany.

6.　　Therefore, because GLISE's state of incorporation and principal place of business are both Munich, Germany, it is a citizen of Germany.

---

[1] In determining the citizenship of an SE for federal diversity jurisdiction purposes, the district court in *SNC-Lavalin Constructors Inc. v. Tokio Marine Kiln Insurance Limited and Certain Underwriters at Lloyd's*, Nos. GJH-19-873 and GJH-19-1510, 2021 WL 2550505 (D. Md. June 21, 2021) found that an SE had all of the features of a U.S. corporation. *Id*. at *8-9. Accordingly, the court concluded that an SE should be treated like a U.S. corporation for the purposes of diversity jurisdiction. *Id*. The court in *SYNY Logistics, Inc. v. Great Lakes Insurance SE*, No. 22-CV-764, 2023 WL 6388233 (N.D. Ill. Sept. 30, 2023) found the same, specifically as to GLISE, ruling that SE's are to be treated like corporations for diversity purposes. *Id*. at *4-5. The Court concluded that it had diversity jurisdiction because GLISE was registered in Germany and its principal place of business is in Munich. *Id*. at *4-5.

7.	Respondent, La Bamba, is a corporation and, like GLISE, when determining its citizenship, it is a citizen of both its state of incorporation and principal place of business for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

8.	Pursuant to the Florida Department of State, Division of Corporations, La Bamba is a for-profit corporation incorporated in Florida maintaining its principal address at 4815 W. Laurel St., Tampa, Florida 33607.[2] Therefore, Respondent's state of incorporation and its principal place of business is Florida.

9.	La Bamba is therefore a citizen of Florida.

10.	Accordingly, jurisdiction is proper under 28 U.S.C. § 1332.

11.	Venue is proper under 28 U.S.C. § 1391(b)(2), as the property that is the subject matter of this action is situated in Tampa in Hillsborough County, Florida – within this judicial district and division.

---

[2] Available public records can be considered when determining a party's citizenship or domicile; these records could include property records and voter registration. *Brooks v. Sears, Roebuck and Co.*, No. 6:18-cv-5534-Orl-37DCA, 2018 WL 3545421, at *2 (M.D. Fla. Jul. 24, 2018); *Akkan v. Nationstar Mortg. LLC*, No. 1:16-cv-1999-WSD-LTW, 2016 WL 11260335, at *1 (N.D. Ga. Nov. 16, 2016); *Taylor v. American Heritage Church Finance, Inc.*, No. 6:10-cv-559-Orl-31GLK, 2010 WL 2889694, *1-2 (M.D. Fla. Jul. 19, 2010) ("Factors frequently taken into account when assessing the domicile of a party include: the party's current residence; payment of taxes; voter registration and voting practices; driver's license and automobile registration; situs of personal and real property…."); *Jakobot v. American Airlines, Inc.*, No. 10-61576-CIV, 2011 WL 2457915, *4 (S.D. Fla. Jun. 20, 2011); *Matos-Cruz v. JetBlue Airways Corp.*, No. 6:17-cv-380-Orl-37TBS, 2017 WL 3268956, at *1 (M.D. Fla. Aug. 1, 2017).

## II.　　MATERIAL FACTUAL ALLEGATIONS

**A.　　The Policy**

12.　　La Bamba is the named insured under a commercial policy identified by number LK455029 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit "A."**

13.　　The Policy is in effect from September 8, 2024 to September 8, 2025.

14.　　GLISE is a surplus lines insurer[3], and the Policy is issued pursuant to Florida's surplus lines law. *See* Fla. Stat. §§ 626.913–626.937.

15.　　The Policy provides insurance for real property located at 4815 W. Laurel St., Tampa, FL 33607 (the "Property"), which consists of a one-story, concrete masonry unit block structure over a concrete slab-on-grade foundation, out of which the Insured operates a restaurant.

16.　　The Policy provides building coverage of $401,220 and business personal property coverage of $85,500.

17.　　The insurance policy sets forth a $5,000 all other perils ("AOP") deductible and a $40,122 Wind or Hail deductible, which is reached by calculating 10% of the building coverage policy limit of $401,220.

18.　　The Policy is subject to certain pertinent conditions and exclusions, as outlined in part below.

---

[3] *See* OIR website, https://floir.com/CompanySearch/ (last visited Sept. 5, 2024).

19. The Policy's Causes of Loss – Special Form (CP 10 30 10 12) provides in part:

> Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.
>
> **A. Covered Causes Of Loss**
>
> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.
>
> **B. Exclusions**
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
>    …
>
>    **g. Water**
>
>    **(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
>
>    **(2)** Mudslide or mudflow;
>
>    **(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;
>
>    **(4)** Water under the ground surface pressing on, or flowing or seeping through:
>
>    **(a)** Foundations, walls, floors or paved surfaces;
>
>    **(b)** Basements, whether paved or not; or
>
>    **(c)** Doors, windows or other openings; or
>
>    **(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow. This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee,

5

      seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

2. We will not pay for loss or damage caused by or resulting from any of the following:

   …

   **d. (1)** Wear and tear;
   **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
   **(3)** Smog;
   **(4)** Settling, cracking, shrinking or expansion;

   …

   **f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

   …

   **m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

   …

   **c.** Faulty, inadequate or defective:

   **(1)** Planning, zoning, development, surveying, siting;

   **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **(3)** Materials used in repair, construction, renovation or remodeling; or

   **(4)** Maintenance;

   …

6

    **C.** Limitations

    The following limitations apply to all policy forms and endorsements, unless otherwise stated:

    **1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

…

    **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    **(2)** The loss or damage is caused by results from thawing of snow, sleet or ice on the building or structure.

*See* **Ex. A**, Policy, Causes of Loss – Special Form (CP 10 30 10 12) at pp 1-4 and 6 of 10.

    20.    The Policy's Existing Damage Exclusion (GLK 4185 PR 08 17) provides:

**EXISTING DAMAGE EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

    **CAUSES OF LOSS – BASIC FORM**
    **CAUSES OF LOSS – BROAD FORM**
    **CAUSES OF LOSS – SPECIAL FORM**

The following is added to **B. Exclusions**

> We will not pay for loss or damage caused directly or indirectly by "existing damage." Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> "Existing Damage" means:
>
> 1. Any damage which occurred prior to policy inception regardless of whether such damage was apparent at the time of the inception of this policy or at a later date; or
> 2. Any claims or damages arising out of workmanship, repairs and/or lack of repairs arising from damage which occurred prior to policy inception.

**The Claim**

21. La Bamba first provided notice of loss on October 18, 2024, for alleged damage from Hurricane Milton on October 9, 2024 (the "Claim").

22. On October 23, 2024, GLISE's retained adjuster, Mills Mehr & Associates, inspected the Property and did not find any evidence of windstorm damage. Accordingly, the adjuster recommended an inspection by a professional engineer.

23. Thereafter, GLISE, through its retained Delegated Claims Administrator, PLS Claims, retained an engineer, Stephens Engineering Consultants ("Stephens"), to inspect the property.

24. The professional engineer's inspection was completed on December 11, 2024, which resulted in a Report of Findings dated January 6, 2025.

25. In the Report of Findings, Stephens concluded:

    a. Stephens' inspection revealed no areas of torn or missing membrane consistent with wind-related damage on the low-sloped roof section over the building.

    b. The observed moisture intrusion in the building was the result of deficiencies in the roofing related to the historically ponded water on the roof due to drainage deficiencies as well as the separated applied sealant at the roof penetrations. The moisture intrusion was not the result of a storm-created opening in the roofing or exterior cladding.

**B. GLISE's Coverage Determination**

26. Pursuant to GLISE's investigation, and the findings of Stephens outlined above, it was determined that the alleged damage was either not covered or excluded from the Policy.

27. As part of its detailed and thorough investigation, and based on these findings, GLISE, through PLS Claims, sent a coverage letter to La Bamba on January 27, 2025 (the "Denial Letter"), denying coverage and noting:

> As cited above: wear and tear; rust or other corrosion, decay, deterioration, hidden or latent defect; settling, cracking, shrinking or expansion; and continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more are all excluded Causes of Loss. Additionally, faulty, inadequate or defective: design, specifications, workmanship, repair, construction, renovation, remodeling; Materials used in repair, construction, renovation or remodeling; or maintenance; of part or all of any property on or off the described premises is an excluded Cause of Loss. Lastly, the Policy does not cover interior water damage from rain, whether driven by wind or not unless the building first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain enters.

A true and correct copy of the Denial Letter is attached hereto as **Exhibit "B."**

9

**C.　Respondent's Notices of Intent to Initiate Litigation and GLISE's Responses**

28.　On April 9, 2025, La Bamba's public adjuster, M&T Adjusters, filed the Property Insurance Notice of Intent to Initiate Litigation, bearing notice number 239899 (the "First NOI"), with the Florida Department of Financial Services pursuant to Fla. Stat. § 627.70152. A true and correct copy of the First NOI is attached hereto as **Exhibit "C."**

29.　The First NOI claimed that the Insured disagreed with the coverage determination and alleged $129,515.00 in damages.

30.　GLISE responded to the NOI on April 23, 2025, by invoking its statutory right to reinspect the Property (the "Response"). A true and correct copy of GLISE's Response to the First NOI is attached hereto as **Exhibit "D."**

31.　The requested reinspection, performed by Edgewood Engineering ("Edgewood"), took place on May 12, 2025. Edgewood confirmed the original coverage position: that no wind damage was observed to the property, and that the claimed interior damages were unrelated to a one-time weather event occurring on or about October 9, 2024.

32.　Thereafter, on May 29, 2025, based on the findings of Edgewood, GLISE sent a coverage letter to La Bamba, reaffirming its prior denial. A true and correct copy of GLISE's May 29, 2025 correspondence to La Bamba is attached hereto as **Exhibit "E."**

33. On July 29, 2025, La Bamba's counsel, David Dube of The Lawgical Firm, filed a *second* Property Insurance Notice of Intent to Initiate Litigation, bearing notice number 255050 (the "Second NOI"), with the Florida Department of Financial Services pursuant to Fla. Stat. § 627.70152. A true and correct copy of the Second NOI is attached hereto as **Exhibit "F."**

34. The Second NOI claims that GLISE breached its obligations under the Policy by not extending coverage for the subject claim, alleging $89,393 in damages.

35. The Second NOI further attaches: (1) an estimate prepared by M&T Adjusters Corp., dated December 11, 2024, totaling $114,481.40 Replacement Cost Value ("RCV"); (2) an estimate prepared by Restoration Geeks Corp., dated October 23, 2024, totaling $4,650.00 for tarping; (3) an estimate prepared by Restoration Geeks Corp., dated October 24, 2024, totaling $9,343.84 for water mitigation services; and (4) an estimate prepared by Restoration Geeks Corp., dated December 12, 2024, totaling $1,040.00 for "tarp inspection" (all together, the "Estimates"). A true and correct copy of the Estimates are attached hereto as composite **Exhibit "G."**

36. GLISE responded to the NOI on August 12, 2025, by reaffirming the denial. A true and correct copy of GLISE's Response to the Second NOI is attached hereto as **Exhibit "H."**

## COUNT I – PETITION FOR DECLARATORY RELIEF

37. GLISE re-alleges and re-asserts paragraphs 1-36 as if fully stated

herein.

**A.      Policy's Insuring Clause**

38.     As outlined above, following its investigation, GLISE determined that: (1) There were no areas of torn or missing membrane consistent with wind-related damage on the low-sloped roof section over the building; and (2) The observed moisture intrusion in the building was the result of deficiencies in the roofing related to the historically ponded water on the roof due to drainage deficiencies as well as the separated applied sealant at the roof penetrations, and the moisture intrusion was not the result of a storm-created opening in the roofing or exterior cladding.

39.     Thereafter, GLISE denied coverage for La Bamba's Claim for the reasons alleged in the Denial Letter. Notably, in the Denial Letter, GLISE also reserved all of its rights under the Policy. *See* Ex. B.

40.     On the other hand, La Bamba is seeking to find GLISE in breach of the Policy by arguing entitlement to coverage under the Policy. *See* Ex. C and Ex. F.

41.     As outlined above, GLISE's positions are supported by the plain language of the Policy, and so La Bamba is not entitled to coverage for the subject loss.

42.     Accordingly, GLISE requests that the Court enter a determination finding La Bamba is not entitled to coverage for the subject loss.

43.     This request for relief presents a present, actual, and justiciable question

as to the existence or non-existence of some right, status, immunity, power or privilege, or as to some fact upon which the existence of such right, status, immunity, power or privilege does or may depend; specifically, the application of Florida law and the terms of the Policy on the question of whether La Bamba is entitled to coverage for the subject loss.

44. This request for declaratory relief is not merely advisory, as there is bona fide and present dispute between the Parties.

45. Indeed, considering La Bamba's pre-suit NOI (Ex. F), GLISE is facing a substantial likelihood of future injury because of La Bamba's forthcoming lawsuit asserting a claim for breach of contract, seeking damages ($89,393.00) and attorney's fees against GLISE based on La Bamba's above-described unsupported interpretation of the Policy.

46. Accordingly, there is an actual imminent harm to GLISE from the above-identified facts and circumstances, which could be avoided through a declaration from this Court.

## REQUESTED RELIEF

**WHEREFORE**, Petitioner, Great Lakes Insurance SE, requests that this Honorable Court take jurisdiction over this matter and declare that Respondent, Izalva Corp. dba: La Bamba Spanish Restaurant, is not entitled to coverage for the loss and grant such other further relief deemed just, equitable, and proper.

Respectfully submitted on August 29, 2025.

                By:   */s/ David B. Levin*
                      David B. Levin (Lead Counsel)
                      Florida Bar No. 26394
                      dlevin@bakerdonelson.com
                      Kirstin M. Grice
                      Florida Bar No.: 1011793
                      kgrice@bakerdonelson.com

                      **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
                      200 E. Broward Blvd., Ste. 2000
                      Ft. Lauderdale, FL 33301
                      Telephone: (954) 768-1600

                      Counsel for Petitioner, Great Lakes Insurance SE